IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 6:20-cv-84 |
| | ) | |
| BEN PHILIPPE; CLEBERT PHILIPPE; | ) | |
| MICHELLE JENKINS; and | ) | |
| RELIANCE 1 TAX SERVICES LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF

The United States of America, for its complaint against Ben Philippe, Clebert Philippe,

Michelle Jenkins, and Reliance 1 Tax Services LLC, alleges the following:

1.      This is a civil action brought by the United States under 26 U.S.C. §§ 7402, 7407,

and 7408 to enjoin Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax

Services LLC, and anyone in active concert or participation with them, from:

a. acting as federal tax return preparers or requesting, assisting in, or
directing the preparation or filing of federal tax returns, amended
returns, or other related documents or forms for any person or entity
other than themselves;

b. preparing or assisting in preparing federal tax returns that they know
or reasonably should know would result in an understatement of tax
liability or the overstatement of federal tax refund(s) as penalized by
26 U.S.C. § 6694;

c. owning, operating, managing, working in, investing in, providing
capital or loans to, receiving fees or remuneration from, controlling,
licensing, consulting with, or franchising a tax return preparation
business;

d. training, instructing, teaching, and creating or providing cheat sheets,
memoranda, directions, instructions, or manuals, pertaining to the
preparation of federal tax returns;

    e.   maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

    f.   engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

    g.   engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

This action also seeks, under 26 U.S.C. § 7402, an order requiring Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC to disgorge to the United States the ill-gotten gains that Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC received (in the form of tax preparation fees) for the preparation of federal tax returns making grossly incompetent, negligent, reckless, false, and/or fraudulent claims.

## Authorization

2.      This action has been requested and authorized by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.

## Jurisdiction and Venue

3.      Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a).

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because the defendants reside in this judicial district and a substantial part of the activities giving rise to this suit occurred in this judicial district.

## Defendants

5.      Ben Philippe resides in Orlando, Florida.  He has been preparing tax returns for

others since at least 2012.

6.      Clebert Philippe resides in Orlando, Florida, and is the brother of Ben Philippe. He has been preparing tax returns for others since at least 2012.

7.      Michelle Jenkins resides in Jacksonville, Florida.  She has been preparing tax returns for others since at least 2002.

8.      On or about December 30, 2015, Clebert Philippe incorporated Reliance 1 Tax Services LLC in Florida.  Clebert Philippe is identified as the manager and registered agent of Reliance 1 Tax Services LLC.

## Background

9.      LBS Tax Services ("LBS") began in 2008 as a tax return preparation business in Orlando, Florida operated by Walner Gachette. In 2012, Ben Philippe began working at LBS as a District Sales Manager ("DSM") at an LBS tax return preparation store in Ocala, Florida, owned by Douglas Mesadieu.  Ben Philippe managed the store and also prepared tax returns for customers.  While working at LBS, Ben Philippe learned how to prepare tax returns in an improper manner to generate bogus refunds (such as preparing tax returns making false claims on Forms Schedule A and C and claiming falsely inflated or fabricated Earned Income Tax Credits).  In 2016, the United States District Court for the Middle District of Florida enjoined Gachette from preparing federal tax returns and owning, operating, and franchising a tax preparation business. *See United States v. Walner Gachette*, 6:14-cv-1539 (M.D. Fla.).

10.      In 2013, Ben Philippe worked as a DSM at an LBS store in Jacksonville, Florida, also owned by Mesadieu. Ben Philippe continued to prepare tax returns for customers.  During 2012 and 2013, Ben Philippe provided training to LBS employees on how to prepare tax returns and how to market to potential customers.

11.     In 2014, Ben Philippe entered into an ownership agreement with other LBS DSMs to manage former LBS franchise offices, now operating under the name Milestone Tax Services, a "new" tax preparation business that Mesadieu founded.  Ben Philippe became a "General Sales Manager" for three Milestone Tax Services locations in Jacksonville, Florida. Following the LBS model, DSMs reported to Ben Philippe, as the General Sales Manager.  In 2016, the United States District Court for the Middle District of Florida likewise enjoined Mesadieu from preparing federal tax returns and owning and operating a tax preparation business.  *See United States v. Douglas Mesadieu*, 6:14-cv-1538-ACC-TBS (M.D. Fla.).

12.     In 2015, Ben Philippe, through Allied Tax Services, LLC, owned and operated three tax preparations stores in Jacksonville, Florida under the name Allied Tax Services.  Ben Philippe was the manager and registered agent of Allied Tax Services, LLC.  Ben Philippe trained and provided training materials, scripts, and other documentation related to tax return preparation to the tax return preparers at Allied Tax Services, and oversaw the preparation of tax returns. According to Florida Secretary of State records, Allied Tax Services, LLC has been inactive since on or about September 25, 2015. However, since 2015, tax returns have been filed annually using an Electronic Filing Identification Number ("EFIN") registered to Ben Philippe (through his entity, BenPhilippe, LLC), but with a different tax preparation firm identified as the preparer of the tax returns.

13.     Clebert Philippe was the DSM at one of the Milestone Tax Services stores in Jacksonville that Ben Philippe oversaw in 2014.  In December 2015, shortly after Allied Tax Services, LLC became inactive, Clebert Philippe incorporated Reliance 1 Tax Services, LLC with the Florida Secretary of State. During the time between working at Milestone Tax Services and incorporating Reliance 1 Tax Services, LLC, Clebert Philippe worked at a Rapid Tax 1 tax

preparation store in Tampa, Florida, owned by Milot Odne.  In 2016, the United States District Court for the Middle District of Florida enjoined Odne from preparing federal tax returns and owning and operating a tax preparation business.  *See United States v. Milot Odne, et al.*, 8:15-cv-1079-VMC-UAM (M.D. Fla.).

14.     Reliance 1 Tax Services, LLC utilized the same Employer Identification Number as Allied Tax Services, LLC to operate the former Allied Tax Services store located at 8840 Atlantic Blvd., Jacksonville, Florida.  Reliance 1 Tax Services subsequently opened two new tax preparation stores in Orlando, Florida. Since 2017, Reliance 1 Tax Services has operated one store in Orlando, Florida (at varying address on Hiawassee Road).  Clebert Philippe also often travels to meet his customers to prepare their tax returns.

15.     Michelle Jenkins began working at Milestone Tax Services in 2014.  In 2015, Jenkins worked as a DSM at an Allied Tax Services store in Jacksonville that Ben Philippe oversaw.  Jenkins subsequently opened tax preparation stores under the name S and J Tax Solutions.  In 2018, Jenkins prepared tax returns at 8840 Atlantic Blvd., Jacksonville, Florida, which was previously the address of an LBS Tax Services, Milestone Tax Services, Allied Tax Services, and Reliance 1 Tax Services, LLC tax preparation store.  In 2019, Jenkins prepared tax returns under the name 1040 Capital at 1301 Riverplace Blvd., Jacksonville, Florida.

## The Defendants' Activities

16.     The Defendants, and those acting at the direction of Ben Philippe or with his knowledge and consent, prepare tax returns to generate bogus refunds for customers, enabling the Defendants to charge exorbitant fees and maximize profits at the expense of the United States Treasury.

17.     Many of the Defendants' customers earn low to moderate incomes and lack knowledge regarding tax law and tax return preparation. Customers often have no knowledge that the Defendants have prepared and filed false tax returns on their behalf.  For others, the Defendants mislead customers about what can "legally" be claimed on their tax returns, particularly with respect to various credits and deductions.  The Defendants convince customers to have the Defendants prepare their tax returns by informing customers that they will receive thousands of dollars in (illegal) refunds.

18.     The Defendants, and those acting at the direction of Ben Philippe or with his knowledge and consent, make false claims on tax returns, particularly on the forms attached to those returns, in order to improperly increase customers' refunds.  After completing the returns, the Defendants falsely tell the customers that these forms legally increased the customers' refunds, and charge higher (and often undisclosed) fees due to the additional forms and the higher refund that the Defendants claimed.  The Defendants charge customers fees for preparing the return, fees for each tax form attached to the return, and fees for filing the return.  These fees are all deducted from the customer's tax refund, often without the customer being told the amount that the Defendants actually charged for preparing the tax return.

19.     The Defendants, and those acting at the direction of Ben Philippe or with his knowledge and consent, request on customers' tax returns a refund amount that is not based on the customer's actual income, expenses, deductions, and applicable qualifying credits.  Instead, the refund is based on fabricated income, expenses, deductions, and credits reported by the Defendants.

20.     The Defendants engage in unlawful tax return preparation practices including:

    a.     Making false claims for the Earned Income Tax Credit;

b.      Circumventing due diligence requirements in order to unlawfully maximize the Earned Income Tax Credit;

c.      Fabricating businesses and related business income and expenses reported on Forms Schedule C;

d.      Fabricating itemized deductions, including for unreimbursed employee business expenses and charitable contributions, reported on Forms Schedule A;

e.      Improperly claiming false filing status, such as Head of Household;

f.      Claiming education credits to which their customers are not entitled;

g.      Failing to provide customers with a copy of the completed tax return; and

h.      Charging deceptive and unconscionable fees.

**Phony Claims for the Earned Income Tax Credit
and Failure to Comply with Due Diligence Requirements**

21.     The Defendants, and those acting at the direction of Ben Philippe or with his knowledge and consent, prepare tax returns that include fraudulent claims for the Earned Income Tax Credit ("EITC") often based on fabricated business income and expenses, bogus or improperly-claimed dependents, and/or false filing status.

22.     The EITC is a refundable tax credit available to certain low-income working people. The amount of the credit is based on the taxpayer's income, filing status, and claimed number of dependents.  Because the EITC is a refundable credit, claiming an EITC can, in certain circumstances, reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a payment from the U.S. Treasury.

23.     Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income. The amount of the credit increases as income increases between $1 and a set income amount, and decreases as

7

income increases beyond another higher set income amount.  For example, in tax year 2014 the maximum EITC was $6,143 and was available to eligible individuals with three dependent children who earned income between $13,650 and $17,830.  Some tax preparers who manipulate reported income to maximize the EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot" or "golden range."

24.     Because of the way the EITC is calculated, reporting more income, up to a certain point, allows customers to receive a larger refundable credit. Similarly, claiming losses to offset higher income to decrease the total reported income and to fall within the "sweet spot" allows customers to claim a larger refundable credit.

25.     The Defendants, and those acting at the direction of Ben Philippe or with his knowledge and consent, falsify information to claim the maximum EITC for customers.  For example, to bring the customer's reported earned income within the "sweet spot" for the EITC, and depending on a customer's actual income, the Defendants, and those acting at the direction of Ben Philippe or with his knowledge and consent, inflate or fabricate business income reported on a Form Schedule C, "Profit or Loss from Business (Sole Proprietorship)" (used to report income and expenses from a sole proprietorship), in order to fraudulently increase customers' reported earned income, or claim bogus Schedule C expenses to fraudulently decrease customers' reported earned income.

26.     Because of the potential for abuse in claiming the EITC, Congress has authorized the Secretary of the Treasury to impose "due diligence" requirements on federal tax return preparers claiming the EITC for their customers.  These "due diligence" requirements obligate the tax return preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC. The tax return preparer may not ignore the implications of information

furnished to (or known by) the tax return preparer, and the tax return preparer must make

reasonable inquiries if a reasonable and well-informed tax return preparer knowledgeable in the

law would conclude that the information furnished to the tax return preparer appears to be

incorrect, inconsistent, or incomplete.  Tax return preparers must also document their compliance

with these requirements and keep that documentation for three years.

27.      The Defendants, and those acting at the direction of Ben Philippe or with his

knowledge and consent, fail to comply with the due diligence requirements.  The Defendants

show an intentional disregard for the tax laws and in particular for the due diligence

requirements.

**Fabricated Schedule C Business Income and Expenses**

28.      The Defendants, and those acting at the direction of Ben Philippe or with his

knowledge and consent, prepare tax returns reporting non-existent businesses on bogus Forms

Schedule C.  On some of these returns, the Defendants report substantial business income, but

little or no expenses.  On other returns, the Defendants report substantial expenses, but little or

no income.  The determining factor is whether the tax return preparer needs to inflate a

customer's income (or create income when the customer has none) to bring the reported income

within the EITC "sweet spot," or to lower the taxable income of a customer who has actual

income (such as wages reported on a W-2) in order to either bring the income within the EITC

"sweet spot" or simply to create a phony business loss to offset the customer's wages and falsely

or fraudulently reduce the customer's income tax liability.

**<u>Customer 1</u>**

29.      For example, Clebert Philippe prepared the 2015 and 2016 federal income tax

returns of Customer 1 ("C1") of Jacksonville, Florida, at two separate Reliance 1 Tax Services,

LLC stores in Orlando, Florida.

30.     When having her 2015 tax return prepared, C1 provided Clebert Philippe a Form

W-2 reporting $28,378 in income earned in 2015 through her job at Metro Treatment of Florida.

C1 did not own or operate a business in 2015.

31.     On the Schedule C attached to the tax return, Clebert Philippe falsely claimed that

C1 owned a "Metro Treatment" business (the name of C1's employer as identified on her Form

W-2) that incurred a $12,596 loss in 2015.  Clebert Philippe did not ask C1 if she owned or

operated a business or earned any income outside of her job in 2015.  Clebert Philippe falsely

claimed that C1's non-existent business received $2,547 in gross receipts or sales and incurred

expenses totaling $15,143, including $158 in advertising expenses, $14,650 in car and truck

expenses (for purportedly driving 25,478 "business miles"), $248 in repairs and maintenance,

and $87 in deductible meals and entertainment expenses.  By reporting this fabricated loss,

Clebert Philippe fraudulently reduced C1's taxable income to zero and claimed a bogus refund in

the amount of $6,937 on C1's 2015 tax return.

32.     When having her 2016 tax return prepared, C1 provided Clebert Philippe a Form

W-2 reporting $29,709 in income earned in 2016 through her job at Metro Treatment of Florida.

C1 did not own or operate a business in 2016.

33.     On the Schedule C attached to the tax return, Clebert Philippe falsely claimed that

C1 owned a "Metro Treatment" business (the name of C1's employer as identified on her Form

W-2) that incurred a $12,559 loss in 2016.  Clebert Philippe did not ask C1 if she owned or

operated a business or earned any income outside of her employment in 2016.  Clebert Philippe

falsely claimed that the non-existent business received $2,544 in gross receipts or sales and

incurred expenses totaling $15,103, including $156 in advertising expenses, $14,358 in car and

truck expenses (for purportedly driving 26,589 "business miles"), $244 in repairs and maintenance, $258 in supplies, and $87 in deductive meals and entertainment expenses (the same amount reported on C1's 2015 tax return). The reported fabricated expenses are identical or substantially similar on C1's 2015 and 2016 tax returns. By reporting this fabricated business loss, Clebert Philippe fraudulently reduced C1's taxable income to zero and claimed a bogus refund of $6,774 on C1's 2016 tax return.

34.     Clebert Philippe did not ask C1 any questions about whether she owned her own business. C1 did not tell Clebert Philippe that she received any income or incurred any expenses through self-employment, and was unaware that this information was reported on her tax return.

### Customer 2

35.     Clebert Philippe prepared the 2013, and Jenkins prepared the 2014, 2015, 2016, and 2017, federal income tax returns of Customer 2 ("C2") of Jacksonville, Florida. The returns were prepared at the tax preparation store located at 8840 Atlantic Blvd., Jacksonville, Florida. C2 was employed as a diesel mechanic.

36.     On the 2016 and 2017 tax returns, Jenkins falsely reported that C2 owned a mechanic business that had no sales and received no gross receipts, but incurred expenses.

37.     On the Schedule C attached to C2's 2016 tax return, Jenkins falsely reported that C2 did not receive any income but incurred $8,800 in expenses, all for purported supply expenses for a mechanic business. By reporting the fabricated $8,800 business loss on C2's 2016 tax return, along with the phony unreimbursed employee business expenses reported on the Schedule A, discussed in paragraph 76, *infra*, Jenkins claimed a bogus refund of $10,080 on C2's 2016 tax return.

38.     On the Schedule C attached to C2's 2017 tax return, Jenkins falsely reported that C2 did not receive any income but incurred $7,315 in expenses, all for purported supply expenses for a mechanic business.  By reporting the fabricated $7,315 business loss on C2's 2017 tax return, along with the phony unreimbursed employee business expenses reported on the Schedule A, discussed in paragraph 77, *infra*, Jenkins claimed a bogus refund of $10,054 on C2's 2017 tax return.

**Customer 3**

39.     Jenkins prepared the 2015 and 2016 federal income tax returns of Customer 3 ("C3") of Jacksonville, Florida, at the tax preparation store (identified as S and J Tax Solutions) located at 8840 Atlantic Blvd., Jacksonville, Florida.  In 2015 and 2016, C3 was employed at Applebees, and he also worked at Chili's in 2016. Although C3 was married in 2015 and 2016, Jenkins falsely reported C3's filing status as "single" on those tax returns.

40.      In April 2016, C3 bought a restaurant, which he opened in July 2016.  When having his 2016 tax return prepared, C3 provided Jenkins with business receipts and other documentation related to the restaurant that he owned.  However, Jenkins did not review the receipts and documents.  Instead, Jenkins told C3 that she did not need to see the receipts and documents because C3's income fell into a "gap," without further explaining what that meant.

41.     On the Schedule C attached to C3's tax return, Jenkins falsely reported that C3 did not receive any income through the restaurant that he owned, and incurred $27,612 in expenses.  The fabricated expenses included $225 for advertising, $3,391 for car and truck expenses, $2,536 for contract labor, $4,642 for depreciation purportedly related to C3's personal vehicle, $500 for office expenses, $2,578 for renting or leasing vehicles or machinery, $3,500 for repairs and maintenance, $3,525 for supplies, $715 for taxes and licenses, and $6,000 for wages.

42.     By reporting the fabricated $27,612 business loss on C3's 2016 tax return, Jenkins claimed a bogus refund of $3,847 on C3's 2016 tax return.

**Customer 4**

43.     Customer 4 ("C4") of Orlando, Florida, had her 2014 tax return prepared at the Allied Tax Services store located at 8840 Atlantic Blvd., Jacksonville, Florida.  Ben Philippe is identified as the paid preparer of the tax return.

44.     C4 provided Ben Philippe with a Form W-2 reporting $30,545 in income earned during 2014.  On the Schedule C attached to the tax return, Ben Philippe falsely claimed that C4 owned and operated a "hair stylist" business that incurred a $22,485 loss in 2014.  C4 did not own a business in 2014 and C4 did not tell Ben Philippe that she owned a business in 2014.  Ben Philippe falsely claimed that the fabricated business received $8,143 in gross receipts or sales, and incurred $1,012 in advertising expenses, $23,209 in car and truck expenses (for purportedly driving 41,445 "business miles"), $314 in repairs and maintenance, $2,441 in supplies, and $3,652 in wages.  By reporting this fabricated business loss, along with the phony unreimbursed employee business expenses reported on the Schedule A, discussed in paragraph 81, *infra*, Ben Philippe fraudulently reduced C4's taxable income and claimed a bogus refund of $3,211 on C4's 2014 tax return.

45.     Ben Philippe did not ask C4 any questions about whether she owned her own business. C4 did not tell Ben Philippe that she received any income or incurred any expenses through self-employment, and was unaware that this information was reported on her tax return.

**Customers 5 and 6**

46.     Clebert Philippe prepared the 2016 and 2017 federal income tax returns of Customers 5 and 6 ("C5 and C6") of Tampa, Florida.  C5 and C6 were employed working at

restaurants in 2016 and 2017.  C5 also babysat her friends' children some weekends if her friends go out for the evening, although she did not babysit as a business.  C5 babysat at her home, did not have to drive, and did not advertise.

47.     On the Schedule C attached to the 2016 tax return, Clebert Philippe falsely claimed that C5 lost $13,530 through a child care business.  Clebert Philippe falsely reported that C5 received $1,478 in gross receipts or sales, and incurred expenses totaling $15,008, including $122 for advertising, $14,502 for car and truck expenses (for purportedly driving 26,855 "business miles"), $258 for repairs and maintenance, and $126 for supplies.  C5 did not incur these expenses and did not provide these expense amounts to Clebert Philippe.  By reporting this fabricated business loss, Clebert Philippe claimed a bogus refund of $7,008 on C5's and C6's 2016 tax return.

48.     On the Schedule C attached to the 2017 tax return, Clebert Philippe falsely claimed that C5 lost $13,530 through a child care business.  Clebert Philippe falsely reported that C5 received $1,547 in gross receipts or sales, and incurred expenses totaling $16,275, including $134 for advertising, $14,898 for car and truck expenses (for purportedly driving 27,847 "business miles"), $186 for repairs and maintenance, $292 for supplies, and $765 for a cell phone.  C5 did not incur these expenses and did not provide these expense amounts to Clebert Philippe.  By reporting this fabricated business loss, Clebert Philippe claimed a bogus refund of $7,813 on C5's and C6's 2017 tax return.

49.     C5 and C6 were charged between $800 and $900 to have each tax return prepared.

**Customer 7**

50.     Clebert Philippe prepared the 2016 and 2017 federal income tax returns of

Customer 7 ("C7") of Tampa, Florida, at the Reliance 1 Tax Services store located at 1338 S. Hiawassee Rd., Orlando, Florida.  C7 was employed in 2016 and 2017 and did not own or operate her own business.

51.     On the Schedule C attached to the 2016 tax return, Clebert Philippe falsely reported that C7 owned a business, not identified by name or type of business, through which C7 received gross receipts or sales totaling $1,658, but incurred $15,150 in expenses, including $147 for advertising, $14,523 for car and truck expenses (for purportedly driving 26,895 "business miles"), $247 for repairs and maintenance, and $233 for supplies.  C7 did not own a business, did not incur these business expenses, and did not provide these expense amounts to Clebert Philippe.  By reporting this fabricated $13,492 business loss, along with the phony itemized discussions discussed in paragraph 83, *infra*, Clebert Philippe claimed a bogus refund of $3,289 on C7's 2016 tax return.

52.     On the Schedule C attached to the 2017 tax return, Clebert Philippe falsely reported that C7 owned a business, not identified by name or type of business, through which C7 received gross receipts or sales totaling $1,874, but incurred $12,532 in expenses, including $124 for advertising, $12,180 for car and truck expenses (for purportedly driving 22,767 "business miles"), and $228 for supplies.   C7 did not own a business, did not incur these business expenses, and did not provide these expense amounts to Clebert Philippe.  By reporting this fabricated $10,658 business loss, along with the phony itemized discussions discussed in paragraph 84, *infra*, Clebert Philippe claimed a bogus refund of $4,583 on C7's 2017 tax return.

53.     C7 was charged around $1,000 to have each tax return prepared, and did not receive a complete copy of the tax returns.

**Customer 8**

54.     Clebert Philippe prepared the 2016 and 2017 federal income tax returns of Customer 8 ("C8") of Tampa, Florida, at the Reliance 1 Tax Services store located at 1338 S. Hiawassee Rd., Orlando, Florida. In 2016 and 2017, C8 earned income by babysitting for her sister and her friends.  C8 keeps a notebook of her income and expenses, which she provides to Clebert Philippe when having her tax return prepared. C8 incurred expenses for food for the children and gas to pick up and drop off the children, all of which is detailed in her notebook. C8 did not babysit full-time, and earned approximately $500 per month.

55.     On the Schedules C attached to the 2016 and 2017 tax returns, Clebert Philippe falsely reported that C8 owned a "Beauty Stylist" business, called "[C8's first name] Stylz," rather than a babysitting business.  C8 did not own or operate a beauty or hairstyling business in 2016 or 2017.

56.     On the Schedule C attached to the 2016 tax return, Clebert Philippe falsely reported that C8 received gross receipts or sales totaling $16,324, and incurred $1,567 in expenses.  C8 did not receive any income for a beauty or hairstyling business in 2016, and did not receive that falsely inflated amount of income through her babysitting business.  C8 did not provide these income or expense amounts to Clebert Philippe.  By reporting this fabricated $14,757 in business income, along with the improper filing status claimed, discussed in paragraph 111, *infra*, Clebert Philippe claimed a bogus refund of $5,012 on C8's 2016 tax return.

57.     On the Schedule C attached to the 2017 tax return, Clebert Philippe falsely reported that C8 received gross receipts or sales totaling $17,324, and incurred $1,678 in expenses.  C8 did not receive any income for a beauty or hairstyling business in 2017, and did not receive that falsely inflated amount of income through her babysitting business.  C8 did not

provide these income or expense amounts to Clebert Philippe.  By reporting this fabricated $15,646 in business income, along with the improper filing status claimed, discussed in paragraph 111, *infra*, Clebert Philippe claimed a bogus refund of $5,136 on C8's 2017 tax return.

**Customer 9**

58.     Jenkins prepared the 2016 and 2017 federal income tax returns of Customer 9 ("C9") of Jacksonville, Florida, at the tax preparation store located at 8840 Atlantic Blvd., Jacksonville, Florida. In 2016 and 2017, C9 was employed as a forklift driver and did not own or operate her own business.

59.     On the Schedule C attached to the 2016 tax return, Jenkins falsely reported that C9 owned a "janitorial" business that did not receive any gross receipts or sales, but incurred $4,852 in supply expenses.  C9 did not own a business, did not incur any expenses for a business, and did not tell Jenkins that she incurred any expenses for a business. By reporting the fabricated $4,852 business loss, Jenkins claimed a bogus refund of $7,207 on C9's 2016 tax return.

60.     On the Schedule C attached to the 2017 tax return, Jenkins falsely reported that C9 owned a "janitorial" business that did not receive any gross receipts or sales, but incurred expenses totaling $12,669, including $1,500 for contract labor, $2,066 for insurance, $5,620 for supplies, $2,680 for gas, $528 for brakes, and $275 for a battery.  C9 did not own a business, did not incur any expenses for a business, and did not tell Jenkins that she incurred any expenses for a business.  By reporting this fabricated $12,669 business loss, along with the phony job-related expenses reported, discussed in paragraph 86, *infra*, Jenkins claimed a bogus refund of $4,123 on C9's 2017 tax return.

**Customer 10**

61.     Jenkins prepared the 2016, 2017, and 2018 federal income tax returns of

Customer 10 ("C10") of Pineville, South Carolina.  C10 is retired and receives a pension and social security benefits, and also acts as a mechanic at a garage near his home as a hobby and for extra income.  C10 receives around $100-$200 through this occasional activity as a mechanic. C10 did not discuss with Jenkins any expenses related to acting as a mechanic.

62.     On the Schedule C attached to the 2017 tax return, Jenkins falsely reported that C10 owned a "mechanic" business that received $1,023 in gross receipts or sales, but incurred $15,780 in expenses, including $7,097 in car and truck expenses (for purportedly driving 13,265 business miles), $6,210 for supplies, $1,248 for gas, $875 for maintenance, and $350 for "2 tires."  C10 did not own a business, did not incur such expenses for a business, and did not tell Jenkins that he incurred these expenses for a business.  By reporting this fabricated $14,757 business loss, Jenkins claimed a bogus refund of $3,205 on C10's 2017 tax return.  Jenkins did not provide C10 with a copy of the completed tax return.

63.     On the Schedule C attached to the 2018 tax return, Jenkins falsely reported that C10 owned a "mechanic" business that did not receive any gross receipts or sales, but incurred expenses totaling $4,769, including $992 for car and truck expenses (for purportedly driving 1,820 business miles), $3,675 for supplies, and $102 for gas (despite also falsely claiming car and truck expenses, essentially twice claiming the same fabricated expense).  C10 did not own a business, did not incur such expenses for a business, and did not tell Jenkins that he incurred these expenses for a business.  By reporting this fabricated $4,769 business loss, Jenkins claimed a bogus refund of $891 on C10's 2018 tax return.

**Customer 11**

64.     Jenkins prepared the 2016 and 2017 federal income tax returns of Customer 11 ("C11") of Jacksonville, Florida, at the tax preparation store located at 8840 Atlantic Blvd.,

18

Jacksonville, Florida.  In 2016 and 2017, C11 was employed as a medical coder and did not own or operate her own business.

65.     On the Schedule C attached to the 2016 tax return, Jenkins falsely reported that C11 owned a "catering services" business that did not receive any gross receipts or sales, but incurred $9,248 in expenses, including $3,623 in car and truck expenses (for purportedly driving 6,710 business miles), $3,565 for supplies, $377 for taxes and licenses, $1,068 for fuel (despite also falsely claiming car and truck expenses, essentially twice claiming the same fabricated expense), and $615 for an alternator.  C11 did not own a business, did not incur any expenses for a business, and did not tell Jenkins that she incurred any expenses for a business.  By reporting this fabricated $9,248 business loss, along with the phony job-related expenses reported, discussed in paragraph 89, *infra*, Jenkins claimed a bogus refund of $4,248 on C11's 2016 tax return.

66.     On the Schedule C attached to the 2017 tax return, Jenkins falsely reported that C11 owned a "catering services" business that did not receive any gross receipts or sales, but incurred expenses totaling $5,772, including $2,685 in car and truck expenses (for purportedly driving 5,018 business miles), $2,060 for supplies, $877 for fuel (despite also falsely claiming car and truck expenses, essentially twice claiming the same fabricated expense), and $150 for "2 tires."  C11 did not own a business, did not incur any expenses for a business, and did not tell Jenkins that she incurred any expenses for a business.  By reporting this fabricated $5,772 business loss, along with the phony job-related expenses reported, discussed in paragraph 90, *infra*, Jenkins claimed a bogus refund of $4,317 on C11's 2017 tax return.

**Customer 12**

67.     Customer 12 ("C12") of Jacksonville, Florida, had his 2014 tax return prepared at

the Allied Tax Services store located at 8081 Normandy Blvd., Jacksonville, Florida. C12 was

employed as an airplane sheet metal mechanic in 2014. C12 did not own or operate his own

business in 2014.

68.     On the Schedule C attached to the 2014 tax return, the preparer falsely reported

that C12 owned an auto body shop that did not receive any gross receipts or sales, but incurred

expenses totaling $25,287, including $2,684 for advertising, $7,862 for repairs and maintenance,

$12,488 for supplies, and $2,253 for utilities.  C12 did not own a business, did not incur any

expenses for a business, and did not tell the preparer that he incurred any expenses for a

business.  The preparer did not review the completed return with C12 or explain to C12 that the

tax return claimed that he owned an auto body shop that incurred expenses.  By reporting this

fabricated $25,287 business loss, along with the phony job-related expenses reported, discussed

in paragraph 92, *infra*, the Allied Tax Services preparer claimed a bogus refund of $5,476 on

C12's 2017 tax return.

**Bogus Schedule A Deductions**

69.     The Defendants, and those acting at the direction of Ben Philippe or with his

knowledge and consent, prepare tax returns reporting bogus itemized deductions on Form

Schedule A, "Itemized Deductions," to improperly or fraudulently reduce customers' taxable

income.

70.     For example, the Defendants, and those acting at the direction of Ben Philippe or

with his knowledge and consent, prepare tax returns for customers that include Forms Schedule

A making false claims for purported unreimbursed employee business expenses.  Section 162 of

the Internal Revenue Code governs trade or business expenses.  The Defendants, and those

acting at the direction of Ben Philippe or with his knowledge and consent, often claim deductions

for fabricated, fraudulently inflated, and/or non-qualifying business expenses, particularly for purported business miles driven by customers.

### Customer 2 (continued)

71.     As discussed above, C2 was employed as a diesel mechanic from 2013 through 2017. Clebert Philippe prepared C2's 2013 tax return.

72.     In 2013, C2 received wages totaling $39,124.  On the Schedule A attached to the tax return, Clebert Philippe falsely reported that C2 incurred unreimbursed employee business expenses totaling $24,958, or over 63% of C2's wages.  Clebert Philippe also falsely reported that C2 donated $5,142 in cash to charity in 2013.  As a result of these false claims, and the bogus education credits, discussed in paragraph 114, *infra*, Clebert Philippe claimed a bogus refund in the amount of $6,834 on C2's 2013 tax return.

73.     Jenkins prepared C2's 2014, 2015, 2016, and 2017 federal income tax returns.

74.     In 2014, C2 received wages totaling $49,756.  On the Schedule A attached to the tax return, Jenkins falsely reported that C2 incurred unreimbursed employee business expenses totaling $28,864, or over 53% of C2's wages.  As a result, Jenkins claimed a bogus refund in the amount of $6,817 on C2's 2014 tax return.

75.     In 2015, C2 received wages totaling $56,448.  On the Schedule A attached to the tax return, Jenkins falsely reported that C2 incurred unreimbursed employee business expenses totaling $41,475, or over 73% of C2's wages.  Jenkins falsely reported that C2 used two personal vehicles to drive a total of 72,130 miles for his job, amounts that Jenkins fabricated without C2's input or knowledge.  Even commuting to and from his job, an expense that is not deductible, C2 did not drive a personal vehicle this many miles in 2015.  As a result, Jenkins claimed a bogus refund in the amount of $8,049 on C2's 2015 tax return.

76.     In 2016, C2 received wages totaling $55,002.  On the Schedule A attached to the tax return, Jenkins falsely reported that C2 incurred unreimbursed employee business expenses totaling $39,079, or over 71% of C2's wages.  Jenkins falsely reported that C2 used two personal vehicles to drive a total of 72,368 miles for his job, amounts that Jenkins fabricated without C2's input or knowledge.  Even commuting to and from his job, an expense that is not deductible, C2 did not drive a personal vehicle this many miles in 2016.  As a result of these fabricated expenses, and the bogus business loss reported on the Schedule C, discussed in paragraph 37, *supra*, Jenkins claimed a bogus refund in the amount of $10,080 on C2's 2016 tax return.

77.     In 2017, C2 received wages totaling $55,195.  On the Schedule A attached to the tax return, Jenkins falsely reported that C2 incurred unreimbursed employee business expenses totaling $36,981, or over 67% of C2's wages.  Jenkins falsely reported that C2 used two personal vehicles to drive a total of 69,124 miles for his job, amounts that Jenkins fabricated without C2's input or knowledge.  Even commuting to and from his job, an expense that is not deductible, C2 did not drive a personal vehicle this many miles in 2017.  As a result of these fabricated expenses, and the bogus business loss reported on the Schedule C, discussed in paragraph 38, *supra*, Jenkins claimed a bogus refund in the amount of $10,054 on C2's 2017 tax return.

**Customer 3 (continued)**

78.     As discussed above, Jenkins prepared the 2015 and 2016 federal income tax returns of C3, who was employed at Applebees in 2015.  Jenkins incurred minimal expenses for his job at Applebees; occasionally he would need to use his personal car to drive to the store or to another Applebees location to pick up supplies.

79.     In 2015, C3 received wages totaling $54,560.  On the Schedule A attached to the tax return, Jenkins reported fabricated unreimbursed employee business expenses totaling

$25,952, or over 47% of C3's wages.  Jenkins falsely reported that C3 used two personal

vehicles (he owned only one) to drive a total of 45,134 miles for his job, amounts that Jenkins

fabricated without C3's input or knowledge.  Even commuting to and from his job at Applebee's,

an expense that is not deductible, C3 did not drive his personal vehicle this many miles in 2015.

Jenkins also falsely reported that C3 incurred $11,809 in medical and dental expenses and

donated $8,125 in cash to charity in 2015.  Thus, Jenkins falsely claimed $46,576 in itemized

deductions on C3's tax return.

80.     By reporting these fabricated expenses, Jenkins claimed a bogus refund in the

amount of $5,860 on C3's 2015 tax return.

**Customer 4 (continued)**

81.     Ben Philippe prepared C4's 2014 tax return, as discussed in paragraph 44, *supra*.

In addition to falsely claiming expenses on her Form Schedule C, Ben Philippe also falsely

claimed on the Form Schedule A attached to her 2014 tax return that C4 incurred $24,826 in

unreimbursed employee business expenses. C4 did not tell Ben Philippe about any of these

reported expenses and was unaware that they were reported on her tax return. By reporting these

fabricated business expenses, and the phony business loss on the Schedule C, Ben Philippe

claimed a bogus refund of $3,211 on C4's 2014 tax return.

**Customer 7 (continued)**

82.     As discussed above, Clebert Philippe prepared the 2016 and 2017 federal income

tax returns of C7.  C7 emailed her Forms W-2 and health insurance documents to Clebert

Philippe.  C7's only job-related expenses were for her "business casual" clothing, a non-

deductible expense.

83.     In 2016, C7 received wages totaling $42,606.  On the Schedule A attached to C7's 2016 tax return, Clebert Philippe reported fabricated unreimbursed employee business expenses totaling $12,294, or over 28% of C7's wages.  The phony job-related expenses included $1,477 for a uniform and $1,236 for a cell phone; the remaining purported expenses were not categorized on the filed tax return.  Clebert Philippe also falsely reported that C7 donated $4,047 in cash to charity in 2016.  As a result of these fabricated expenses, and the bogus business loss reported on the Schedule C, discussed in paragraph 51, *supra*, Clebert Philippe claimed a bogus refund in the amount of $3,289 on C7's 2016 tax return.

84.     In 2017, C7 received wages totaling $51,672.  On the Schedule A attached to C7's 2017 tax return, Clebert Philippe reported fabricated unreimbursed employee business expenses totaling $13,910, or over 26% of C7's wages.  The phony job-related expenses included $875 for a uniform, $1,217 for a cell phone, and $1,129 for dry cleaning; the remaining purported expenses were not categorized on the filed tax return.  Clebert Philippe also falsely reported that C7 donated $7,799 in cash to charity in 2017.  As a result of these fabricated expenses, and the bogus business loss reported on the Schedule C, discussed in paragraph 52, *supra*, Clebert Philippe claimed a bogus refund in the amount of $4,583 on C7's 2017 tax return.

**Customer 9 (continued)**

85.     As discussed above, Jenkins prepared the 2017 federal income tax return of C9. In 2017, C9 was employed as a forklift driver and provided Jenkins with a copy of her Form W-2.  C9's only work-related driving is commuting to and from her worksite, a non-deductible expense.  Jenkins did not ask C9 how many miles she drove her personal car in 2017.

86.     In 2017, C9 received wages totaling $32,765.  On the Schedule A attached to the tax return, Jenkins reported fabricated unreimbursed employee business expenses totaling

$12,855, or over 39% of C9's wages.  Jenkins falsely reported that C9 used her personal vehicle

to drive 24,028 miles for her job, an amount that Jenkins fabricated without C9's input or

knowledge.  As a result of these fabricated expenses, and the bogus business loss reported on the

Schedule C, discussed in paragraph 60, *supra*, Jenkins claimed a bogus refund in the amount of

$4,123 on C9's 2017 tax return.

### Customer 10 (continued)

87.     As discussed above, Jenkins prepared the 2016 federal income tax return of C10.

C10 is retired and was not employed in 2016.  Despite the fact that C10 was not employed, on

the Schedule A attached to the tax return, Jenkins reported that C10 incurred unreimbursed

employee business expenses, purportedly related to a non-existent job, totaling $30,352.  Jenkins

falsely reported that C10 used two personal vehicles to drive a total of 56,540 miles for a non-

existent job in 2016, an amount that Jenkins fabricated without C10's input or knowledge. These

fabricated expenses falsely reduced C10's taxable income (from his pension and social security

benefits).  As a result of these fabricated expenses, Jenkins claimed a bogus refund in the amount

of $3,095 on C10's 2016 tax return.

### Customer 11 (continued)

88.     As discussed above, Jenkins prepared the 2016 and 2017 federal income tax

returns of C11.  In 2016 and 2017, C11 was employed as a medical coder and provided Jenkins

with a copy of her Forms W-2 when having her tax returns prepared.  C11's only work-related

driving is commuting to and from her worksite, a non-deductible expense.  Jenkins did not ask

C11 how many miles she drove her personal car in 2016 or 2017.

89.     In 2016, C11 received wages totaling $38,875.  On the Schedule A attached to the

tax return, Jenkins reported fabricated unreimbursed employee business expenses totaling

$17,508, or over 45% of C11's wages.  Jenkins falsely reported that C11 used her personal vehicle to drive 32,422 miles for her job, an amount that Jenkins fabricated without C11's input or knowledge.  As a result of these fabricated expenses, and the bogus business loss reported on the Schedule C, discussed in paragraph 65, *supra*, Jenkins claimed a bogus refund in the amount of $4,248 on C11's 2017 tax return.

90.     In 2017, C11 received wages totaling $37,487.  On the Schedule A attached to the tax return, Jenkins reported fabricated unreimbursed employee business expenses totaling $15,572, or over 41% of C11's wages.  Jenkins falsely reported that C11 used her personal vehicle to drive 29,106 miles for her job, an amount that Jenkins fabricated without C11's input or knowledge.  As a result of these fabricated expenses, and the bogus business loss reported on the Schedule C, discussed in paragraph 66, *supra*, Jenkins claimed a bogus refund in the amount of $4,317 on C11's 2017 tax return.

### Customer 12 (continued)

91.     As discussed above, C12 had his 2014 tax return prepared at Allied Tax Services.  C12 was employed as a sheet metal airline mechanic in 2014 and provided the preparer with his Form W-2.  C12 incurred some expenses for his job, including for tools and a uniform.

92.     On the Schedule A attached to the tax return, the preparer falsely reported that C12 incurred unreimbursed employee business expenses totaling $17,155.  C12 did not incur this amount of job-related expenses and did not provide this amount to the preparer.  As a result of these fabricated expenses, and the bogus business loss reported on the Schedule C, discussed in paragraph 68, *supra*, the Allied Tax Services preparer claimed a bogus refund in the amount of $5,476 on C12's 2014 tax return.

**Customers 13 and 14**

93.     For example, Customers 13 and 14 ("C13 and C14") of Jacksonville, Florida, had their 2014 tax return prepared at the Allied Tax Services store located at 8081 Normandy Blvd. in Jacksonville, Florida.

94.     C13 and C14 gave the preparer their Forms W-2 (showing wages totaling $73,242), mortgage interest statement, and medical expense receipts. On the Schedule A attached to the tax return, the preparer reported fabricated unreimbursed employee business expenses totaling $7,286.  These phony expenses included $6,190 in vehicle expenses (for purportedly driving 11,052 business miles).  C13 and C14 did not drive their vehicles for their jobs, but only commuting from home to work, a non-deductible expense.  The preparer also falsely claimed "other expenses" totaling $10,790, for the following nondeductible expenses: $3,562 for utility bills, $6,772 for grocery bills, and $506 for veterinarian visits.  C13 and C14 did not provide these expenses to the preparer and did not know that the expenses were reported on their tax return.  By reporting these fabricated expenses, the Allied Tax Services preparer fraudulently reduced C13's and C14's taxable income, and claimed a bogus refund of $2,172 on the 2014 tax return of C13 and C14.

**Customer 15**

95.     Jenkins prepared the 2016 and 2017 federal income tax returns of Customer 15 ("C15") of Jacksonville, Florida, at the tax preparation store located at 8840 Atlantic Blvd., Jacksonville, Florida.  In 2016 and 2017, C15 was employed as an IT support technician and provided Jenkins with a copy of his Forms W-2.  C15's only work-related driving is commuting to and from his worksite, a non-deductible expense.  C15 did not discuss any mileage amounts with Jenkins when having his tax returns prepared.

96.     In 2016, C15 received wages totaling $41,778.  On the Schedule A attached to the tax return, Jenkins reported fabricated unreimbursed employee business expenses totaling $31,292, or over 74% of C15's wages.  Jenkins falsely reported that C15 drove two personal vehicles a total of 57,948 miles for his job, an amount that Jenkins fabricated without C15's input or knowledge.  As a result of these fabricated expenses, Jenkins claimed a bogus refund in the amount of $4,598 on C15's 2016 tax return.

97.     In 2017, C15 received wages totaling $44,103.  On the Schedule A attached to the tax return, Jenkins reported fabricated unreimbursed employee business expenses totaling $26,199, or over 59% of C15's wages.  Jenkins falsely reported that C15 drove two personal vehicles a total of 48,970 miles for his job, an amount that Jenkins fabricated without C15's input or knowledge.  As a result of these fabricated expenses, and a phony education credit discussed in paragraph 115, *infra*, Jenkins claimed a bogus refund in the amount of $6,252 on C15's 2017 tax return.

**Customer 16**

98.     Clebert Philippe prepared the 2017 federal income tax return of C16 of Seminole, Florida.  C16 was employed as a bartender and an electrician in 2017, and emailed his Forms W-2 to Clebert Philippe.

99.     In 2017, C16 received wages totaling $28,459.  On the Schedule A attached to C16's 2017 tax return, Clebert Philippe reported fabricated unreimbursed employee business expenses totaling $15,154, or over 53% of C16's wages.  The phony job-related expenses included $625 for a uniform and $1,278 for a cell phone; the remaining purported expenses were not categorized on the filed tax return.  Clebert Philippe also falsely reported that C16 donated $2,092 in cash to charity in 2017.  C16 did not provide these amounts to, or discuss any expenses

with, Clebert Philippe when having his return prepared.  As a result of these fabricated expenses, Clebert Philippe claimed a bogus refund in the amount of $1,384 on C16's 2017 tax return.

**Customer 17**

100.    Customer 17 ("C17") of Jacksonville, Florida, had his 2014 tax return prepared at the Allied Tax Services store located at 8081 Normandy Blvd., Jacksonville, Florida. C17 was employed as a truck driver in 2014. When C17 travelled for his job, his employer reimbursed his lodging and transportation expenses and he received a per diem amount to cover food and incidental expenses.

101.    In 2014, C17 received wages totaling $29,614.  On the Schedule A attached to the tax return, the preparer falsely reported that C17 incurred unreimbursed employee business expenses totaling $19,136, or over 64% of C17's wages.  The preparer falsely reported that C17 incurred job-related expenses including $9,037 for tools, $1,412 for utilities, $5,451 in vehicle expenses, $2,458 for overnight travel expenses, and $1,555 for meals and entertainment expenses.  C17 did not incur these purported job-related expenses and did not provide these amounts to the preparer.  The preparer asked C17 how far he drove to and from his home to his workplace, but C17 did not discuss any other vehicle expenses with the preparer.  The preparer did not review the completed tax return with C17, but only told him where to sign the return.  As a result of these fabricated expenses, the Allied Tax Services preparer claimed a bogus refund in the amount of $3,173 on C17's 2014 tax return.

**Customer 18**

102.    Customer 18 ("C18") of Jacksonville, Florida, had her 2014 tax return prepared at the Allied Tax Services store located at 8081 Normandy Blvd., Jacksonville, Florida. C18 was employed as a payroll administrator in 2014. C18 did not incur any expenses related to her job.

103.     In 2014, C18 received wages totaling $42,896.  On the Schedule A attached to the tax return, the preparer falsely reported that C18 incurred unreimbursed employee business expenses totaling $19,185, or over 44% of C18's wages.  The preparer falsely reported that C18 incurred job-related expenses including $3,354 for uniforms and $4,614 for vehicle maintenance; the remaining purported expenses were not described or categorized on the filed tax return.  The preparer also falsely reported that C18 donated $4,285 by cash or check to charity. C18 did not incur these expenses and did not provide these amounts to the preparer.

104.     The preparer did not review the completed tax return with C18, but only told him where to sign the return.  As a result of these fabricated expenses, and the bogus education credits discussed in paragraph 116, *infra*, the Allied Tax Services preparer claimed a bogus refund in the amount of $6,755 on C18's 2014 tax return.

### Customer 19

105.     Customer 19 ("C19") of Jacksonville, Florida, had his 2014 tax return prepared at the Allied Tax Services store located at 8081 Normandy Blvd., Jacksonville, Florida.  C19, who worked at a steel wire manufacturer, did not incur any expenses related to his job in 2014 other than for protective clothing.

106.     In 2014, C19 received wages totaling $41,754. On the Schedule A attached to the tax return, the preparer falsely reported that C19 incurred unreimbursed employee business expenses totaling $19,853, or over 47% of C19's wages.  The preparer falsely reported that C19 incurred job-related expenses including $3,839 for "work attire," $1,325 for a cell phone, $2,746 for vehicle maintenance, and $11,943 for vehicle expenses (for purportedly driving 21,326 business miles). C19 did not incur these expenses and did not provide these amounts to the

preparer. As a result of these fabricated expenses, the Allied Tax Services preparer claimed a bogus refund in the amount of $4,910 on C19's 2014 tax return.

### Customer 20

107. Customer 20 ("C20") of Middleburg, Florida, had his 2014 tax return prepared at the Allied Tax Services store located at 6003 Roosevelt Blvd., Jacksonville, Florida. C20, who was retired from the military and worked at Wal-Mart and served in the National Guard in 2014, only incurred clothing expenses related to his job at Wal-Mart and his National Guard duties.

108. In 2014, C20 received wages totaling $11,612. On the Schedule A attached to the tax return, the preparer falsely reported that C20 incurred unreimbursed employee business expenses totaling $6,089, or over 52% of C20's wages, purportedly for driving 10,874 business miles. The preparer also reported a separate deduction for fabricated uniform expenses in the amount of $1,178. The preparer also falsely reported that C20 donated $17,789 by cash or check to charity in 2014. C20 did not incur these expenses and did not provide these amounts to the preparer. As a result of these fabricated expenses, the Allied Tax Services preparer claimed a bogus refund in the amount of $300 on C20's 2014 tax return.

### Intentionally Claiming an Improper Filing Status

109. The Defendants, and those acting at the direction of Ben Philippe or with his knowledge and consent, prepare tax returns reporting false filing status. Specifically, Head of Household filing status is claimed on customers' tax returns to increase the amount of the customers' standard deduction, even though the Defendants are aware that the customer does not qualify for Head of Household filing status.

110. The Defendants file separate returns for married couples who are not living apart, improperly using the "head-of-household" or "single" filing status, both of which are unavailable

to married couples living together.  Often, this is an attempt to increase the claimed EITC; a

qualifying couple with at least two children who, together, might otherwise receive a single

EITC refund of $5,000 by properly claiming "married, filing jointly," may instead each receive a

refund of $3,000 or more, by both falsely claiming Head of Household or single status and each

claiming at least one dependent.

### Customer 8 (continued)

111.    For example, Clebert Philippe prepared the 2016 and 2017 federal income tax

returns of C8, as discussed in paragraphs 54 through 57, *supra*.  In 2016 and 2017, C8 lived with

her boyfriend, who provided the majority of the financial support for the household.  C8

informed Clebert Philippe of this living arrangement and that C8 did not financially support the

household.  However, on C8's 2016 and 2017 tax returns, Clebert Philippe falsely claimed

"Head of Household" filing status, resulting in a larger bogus refund claimed on C8's 2016 and

2017 tax returns.

### Customer 21

112.    Customer 21 ("C21") of Jacksonville, Florida, had her 2014 federal income tax

return prepared at the Allied Tax Services located at 6003 Roosevelt Blvd., Jacksonville, Florida.

C21 was married, and informed the preparer that she was married.  However, the preparer falsely

claimed "Head of Household" filing status on C21's tax return.  On the Schedule A attached to

the tax return, the preparer falsely reported that C21, a teacher, incurred $10,754 in unreimbursed

employee business expenses, and donated $15,141 by cash or check to charity.  By claiming the

phony filing status and reporting the fabricated deductions on the Schedule A, the Allied Tax

Services preparer claimed a bogus refund in the amount of $5,759 on C21's 2014 tax return.

**Bogus Education Credits**

113.     The Defendants, and those acting at the direction of Ben Philippe or with his knowledge and consent, also claim bogus education expenses and falsely claim refundable education credits, including the American Opportunity education credit, on customers' federal income tax returns.  Unlike many tax credits, a refundable tax credit entitles qualifying taxpayers to receive refunds even if they have no tax liability. The Defendants, and those acting at the direction of Ben Philippe or with his knowledge and consent, claim false education credits on the tax returns of customers who did not attend college and had no qualifying education expenses, in order to generate a larger bogus refund.

**Customer 2 (continued)**

114.     For example, as discussed above, Clebert Philippe prepared C2's 2013 tax return. Clebert Philippe falsely reported that C2's dependent attended college in 2013, and that C2 incurred education expenses in the amount of $3,254.  In reality, no educational expenses were reported to the IRS by the educational institution in connection with C2's dependent.  Clebert Philippe thus claimed bogus education credits in the amounts of $926 and $226 on C2's 2013 tax return.

**Customer 15 (continued)**

115.     As discussed above, Jenkins prepared the 2017 federal income tax return of C15. C15 attended college in 2017, but his expenses ($615) were covered by scholarships or grants ($1,938). C15 provided Jenkins with a copy of the Form 1098-T provided by the school, showing these expenses and scholarships and grants. Jenkins, however, falsely reported that C15 incurred out-of-pocket education expenses and claimed a bogus education credit in the amount of $246 on C15's 2017 tax return.

**Customer 18 (continued)**

116.    As discussed above, C18 had her 2014 tax return prepared at Allied Tax Services.
C18 attended college in 2014, but did not incur any out-of-pocket expenses, as all of her
education-related expenses were covered by scholarships or grants as shown on the tuition
statement that C18 provided to the preparer. The Allied Tax Services preparer falsely reported
that C18 incurred $4,000 in education expenses, and claimed bogus education credits in the
amounts of $1,000 and $703 on C18's 2014 tax return.

<strong>Unconscionable and Undisclosed Fees</strong>

117.    The Defendants charge unconscionably high fees to prepare tax returns, which are
typically charged without customers' knowledge.  The Defendants charge these high fees to
prepare and file false tax returns with unnecessary and bogus forms and schedules attached,
when they should have honestly prepared a basic Form 1040 tax return.

118.    The Defendants intentionally deceive customers regarding the fees charged for the
preparation of tax returns.

119.    The Defendants charge additional fees for each form and schedule (such as a
Schedule C or Schedule A) attached to the Form 1040 tax return.  These fees result in a total tax
return preparation fee much higher than the amount advertised.

120.    The high fees charged (and the fee structure, which encourages the addition of
unnecessary and often improper forms and schedules to the Form 1040) are a strong incentive for
the Defendants, and those acting at the direction of Ben Philippe or with his knowledge and
consent, to prepare and file fraudulent returns claiming excessive refunds based on bogus claims
and associated forms and schedules.

121.    Because the Defendants target low-income individuals, the high fees frequently can pose a significant financial hardship for customers.  Customers may be required to pay back the improper refunds that they receive.  Because the Defendants deduct their high fees directly from her customers' refunds, customers required to return these improper refunds to the government must also return the portion subtracted as fees.  Thus, customers are then out-of-pocket the high fees that the Defendants charged.  Additionally, fees are unconscionable for the basic – albeit fraudulent – tax returns being prepared for these customers, who are often eligible for free tax return preparation and electronic filing elsewhere.

122.    The Defendants, and those acting at the direction of Ben Philippe or with his knowledge and consent, also routinely and intentionally fail to disclose to customers all fees charged.  The Defendants, and those acting at the direction of Ben Philippe or with his knowledge and consent, present forms to customers to sign, including a form acknowledging the fees charged, without allowing the customer to closely review or understand the forms they are signing.  Alternatively, the Defendants, and those acting at the direction of Ben Philippe or with his knowledge and consent, tell customers one amount for fees and then later increase the fees without the customers' knowledge or consent.  Customers are often surprised to learn that the refund requested on their return is hundreds if not thousands of dollars more than the refund amount that they received after the fees were deducted.

123.    The Defendants' fees are not paid by customers at the time of the preparation of their tax returns, but instead are subtracted from the customers' tax refund.  By doing so, the Defendants are able to conceal from unsuspecting customers the actual amount that the customers pay to have their tax return prepared. Customers typically do not discover that the fees charged are much more than the customers anticipated for the preparation of their tax return until

the customers receive a refund that is much less than quoted by the tax return preparer, after the Defendants subtracted their high fees.

124.    The Defendants' practice of charging unconscionable and undisclosed fees interferes with the administration and enforcement of the Internal Revenue laws. Such behavior erodes consumer confidence in tax return preparers and dissuades taxpayers from seeking professional assistance with the preparation of their federal tax returns.

**Failure to Provide Customers with Copies of their Completed Tax Returns**
**in Violation of 26 U.S.C. § 6701(a)**

125.    The Defendants, and those acting at the direction of Ben Philippe or with his knowledge and consent, fail to provide customers with copies of their completed tax returns. The completed tax return, filed with the IRS, shows the refund that the Defendants are claiming for the customer.  For example, a customer who is provided a copy of a tax return showing the actual tax refund claimed is able to determine the amount of fees that the Defendants charged by subtracting the amount of the refund that the customer actually receives from the amount of the refund claimed on the tax return.  The Defendants' failure to provide a copy of a customer's completed tax return is part of the strategy to conceal the actual fees from her customers.

126.    Failing to provide a customer with a copy of the completed tax return also violates 26 U.S.C. § 6107(a), which requires that a tax return preparer "shall furnish a completed copy of [a tax return or claim for refund] to the taxpayer not later than the time such return or claim is presented for such taxpayer's signature."

127.    Customers who do receive a copy of the tax return often receive only the first two pages of the Form 1040, but not the other forms filed with the return, such as Forms Schedule C, Forms Schedule A, and Forms 2106, "Employee Business Expenses."  This is because the

36

Defendants make false claims on these forms and, to conceal the claims from customers, do not provide customers with copies of these completed forms.

## Harm Caused by the Defendants

128.    The Defendants' preparation of false and fraudulent tax returns at their tax return preparation stores, false and misleading statements directed to customers and potential customers, and culture favoring volume and ill-gotten profits over accuracy and integrity have harmed the public and the United States Treasury. These practices harm the public because the Defendants and many of their preparers prepare false or fraudulent tax returns that understate their customers' correct income tax liabilities and illegally cause customers to incorrectly report their federal tax liabilities and underpay their taxes.

129.    The Defendants' misconduct (and that of preparers acting at Ben Philippe's direction or with his knowledge and consent) harms the United States Treasury by causing lost tax revenue.

130.    The Defendants' customers have also been harmed because they relied on the Defendants and their tax preparation stores to prepare proper tax returns. Instead, customers' tax returns substantially understated their correct tax liabilities after paying unconscionably high fees to have their tax returns prepared. As a result, many customers, who are often low-income taxpayers, now face large income tax debts and may be liable for penalties and interest.

131.    Customers are harmed by the unconscionably high and frequently undisclosed fees tied to anticipated tax refunds. These fees are subtracted from the erroneous refunds that result from the false or fraudulent tax return preparation perpetrated by the Defendants, and those acting at the direction of Ben Philippe or with his knowledge and consent. When the IRS conducts audits or examinations of customers and seeks repayment of these erroneous refunds,

the customers are liable for the repayment of those refunds. Not only do customers face the

hardship associated with repayment of erroneous refunds resulting from the Defendants' greed at

others' expense, but customers may also have to repay the portion of the refund that the

Defendants subtracted in fees. Customers may also have to pay additional fees to other tax return

preparers to file amended tax returns to correct the false or fraudulent tax returns prepared and

filed by the Defendants and those acting at the direction of Ben Philippe or with his knowledge

and consent.

132.    The Defendants' misconduct further harms the United States and the public by

requiring the IRS to devote some of its resources to detecting her false claims on tax returns and

assessing and collecting lost tax revenues from the Defendants' customers.  Consequently,

identifying and recovering all lost tax revenues resulting from the Defendants' activities may be

impossible.

133.    The Defendants' misconduct also harms the United States and the public because

the Defendants train other tax preparers, who have no previous tax return preparation experience,

on how to prepare tax returns that make false or fraudulent claims.  These Defendant-trained tax

preparers, in turn, often open their own tax preparation stores using the Defendants' investments

of the ill-gotten gains that the Defendants received for the preparation of tax returns, or using the

income that the preparers received from the Defendants for the preparation of tax returns making

false or fraudulent claims.  In this manner, the preparation of false or fraudulent tax returns

spreads like a wildfire.

134.    The Defendants' misconduct also causes intangible harm to honest tax return

preparers who unfairly lose business to the Defendants due to their willingness to break the law.

Customers often have their returns prepared at the Defendants' tax preparation stores because

they promise the maximum refund, and deliver by fabricating claims and deductions on customers' tax returns.

135.    Finally, the Defendants' misconduct harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws.

136.    The harm to the government and the public will continue, and likely increase, unless the Defendants are enjoined because—given the seriousness and pervasiveness of their illegal conduct—without an injunction, the Defendants are likely to continue preparing false and fraudulent federal income tax returns for customers.  An injunction will serve the public interest because it will put a stop to the Defendants' illegal conduct and the harm that it causes the United States and its citizens.

## Count I
## Injunction under 26 U.S.C. § 7407

137.    Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. § 6694 or § 6695. Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct, and the court further finds that a narrower injunction (i.e., prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a tax return preparer. The prohibited conduct justifying an injunction includes, among other things, the following:

   a.    Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a return preparer who prepares a return or claim for refund that contains an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

    b.          Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which among other conduct, penalizes a return preparer who recklessly or intentionally disregards IRS rules or regulations;

    c.          Engaging in conduct subject to penalty under 26 U.S.C. § 6695(g), which penalizes a return preparer who fails to comply with the statutory due diligence requirements;

    d.          Guaranteeing the payment of any tax refund or the allowance of any tax credit; or

    e.          Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

138.    Section 7701(a)(36) of the Internal Revenue Code defines tax return preparer to include not only the individual who physically prepares a tax return for compensation, but also anyone "who employs one or more persons" to prepare tax returns for compensation.

139.    Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, as shown above in paragraphs 5 through 136, are tax return preparers who have repeatedly and continually prepared or submitted returns or portions of returns (or, with respect to at least Ben Philippe, employed or managed others who prepared or submitted returns or portions of returns) that contain unreasonable positions and substantially understate the liability for tax on the return. Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC also advise, instruct, direct, and cause managers, preparers, and employees to engage in tax fraud, and to prepare federal income tax returns asserting unreasonable, unrealistic, frivolous and fraudulent positions. Accordingly, Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC knew (or should have known) of the unreasonable, unrealistic, frivolous and fraudulent positions.

140.    Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, and those acting in concert with them and at their direction, have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing federal

tax returns that understate their customers' liabilities based on unrealistic, frivolous and reckless positions. Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, through the actions described above, also recklessly or intentionally disregard IRS rules or regulations.

141.    Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, and those acting in concert with them and at their direction, have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6695. The Treasury regulations promulgated under 26 U.S.C. § 6695(g) prohibit a return preparer from claiming the EITC without first conducting proper due diligence and documenting his or her compliance with the due diligence requirements. *See* 26 C.F.R. § 1.6695-2 (2011).  Not only do Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC fail to conduct proper due diligence or comply with the due diligence requirements, but they also advise, encourage, and cause managers, preparers, and employees acting with their knowledge or consent to circumvent the due diligence requirements and to ignore or disregard the information provided by customers.

142.    Ben Philippe's, Clebert Philippe's, Michelle Jenkins', and Reliance 1 Tax Services LLC's failure to comply with the due diligence requirements for the EITC violates Treasury Regulations and their willingness to falsify information to obtain the EITC for their customers shows a reckless and/or intentional disregard of IRS rules and regulations.

143.    Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, and those acting in concert with them and at their direction, have continually and repeatedly prepared federal income tax returns that claim the EITC for customers, where Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, and those acting

in concert with them and at their direction, have not conducted, let alone documented, the required due diligence procedures.

144.    Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC also fail to comply with 26 U.S.C. § 6695(a), which requires that a tax return preparer provide a copy of the completed tax return to the taxpayer.

145.    Ben Philippe's, Clebert Philippe's, Michelle Jenkins', and Reliance 1 Tax Services LLC's continual and repeated violations of 26 U.S.C. §§ 6694 and 6695 fall within 26 U.S.C. § 7407(b)(1)(A), and thus are subject to an injunction under 26 U.S.C. § 7407.

146.    Ben Philippe's, Clebert Philippe's, Michelle Jenkins', and Reliance 1 Tax Services LLC's continual and repeated fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws falls within 26 U.S.C. § 7407(b)(1)(D), and thus is subject to an injunction under 26 U.S.C. § 7407.

147.    If Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC are not enjoined from all tax preparation, they and those acting in concert with them and at their direction are likely to continue to prepare and file false and fraudulent tax returns.

148.    Ben Philippe's, Clebert Philippe's, Michelle Jenkins', and Reliance 1 Tax Services LLC's continual and repeated conduct subject to an injunction under 26 U.S.C. § 7407, including their continual and repeated fabrication of expenses and deductions, is so flagrantly illegal and so egregious that it demonstrates that a narrow injunction prohibiting only specific conduct would be insufficient to prevent Ben Philippe's, Clebert Philippe's, Michelle Jenkins', and Reliance 1 Tax Services LLC's interference with the proper administration of the internal revenue laws. Accordingly, Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC should be permanently barred from acting as federal tax return preparers, and

from owning, operating, managing, investing in, controlling, licensing, franchising, or working for a tax return preparation business.

### Count II
### Injunction under 26 U.S.C. § 7408

149.    Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under either 26 U.S.C. § 6700 or § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

150.    Section 6701(a) of the Internal Revenue Code penalizes any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax return, refund claim, or other document knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it will result in an understatement of another person's tax liability. Under 26 U.S.C. § 6701(c)(1), the term "procures" includes "ordering (or otherwise causing) a subordinate to do an act," as well as "knowing of, and not attempting to prevent, participation by a subordinate in an act."

151.    Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, through the actions detailed above in paragraphs 5 through 136, caused the presentation and preparation of false, fraudulent, and abusive tax returns and other documents. Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC prepare, assist, and/or advise with respect to the presentation and preparation of federal tax returns for customers that they know will understate their correct tax liabilities, because Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC knowingly prepare, assist, and/or advise with respect to the presentation and preparation of returns claiming bogus expenses and deductions. Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC

procured and assisted the preparation of false and fraudulent tax returns by filing and encouraging the filing of tax returns they knew were false or fraudulent, and by training and supervising tax return preparers engaging in tax fraud. Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC have thus engaged in conduct subject to a penalty under 26 U.S.C. § 6701.

152.    Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC are likely to continue violating the law absent an injunction. Tax return preparation is Ben Philippe's, Clebert Philippe's, Michelle Jenkins', and Reliance 1 Tax Services LLC's primary source of revenue. To maximize that income, Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC prepare, and instruct and direct managers and preparers to prepare, fraudulent returns. That fraudulent conduct, in turn, gives Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC a competitive edge over law-abiding preparers. It also provides a means for Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC to further exploit their customers by charging them unconscionably high fees, while Ben Philippe's, Clebert Philippe's, Michelle Jenkins', and Reliance 1 Tax Services LLC's fraud simultaneously and callously exposes their customers to possible civil and criminal liability.

153.    If the Court does not enjoin Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, they are likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701.  The preparation of tax returns claiming improper expenses and deductions by Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, and those acting in concert with them and at their direction, is widespread over many customers and tax years. Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

**Count III**
**Injunction under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

154. Section 7402 of the Internal Revenue Code authorizes a district court to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws.

155. Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, through the actions described above in paragraphs 5 through 136, including, but not limited to, intentionally understating their customers' tax liabilities and charging unconscionable and undisclosed fees for the preparation of federal tax returns that intentionally understate their customers' tax liabilities, have engaged in conduct that substantially interferes with the enforcement of the internal revenue laws.

156. Unless enjoined, Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, and those acting in concert with them and at their direction, are likely to continue to engage in such improper conduct and interfere with the enforcement of the internal revenue laws. If Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC are not enjoined from engaging in fraudulent and deceptive conduct, the United States will suffer irreparable injury by providing federal income tax refunds to individuals not entitled to receive them.

157. While the United States will suffer irreparable injury if Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC are not enjoined, Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC will not be harmed by being compelled to obey the law.

158. Enjoining Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC is in the public interest because an injunction, backed by the Court's contempt

powers if needed, will stop Ben Philippe's, Clebert Philippe's, Michelle Jenkins', and Reliance 1 Tax Services LLC's illegal conduct and the harm it causes the United States and the Defendants' customers.

159.     The Court should impose injunctive relief under 26 U.S.C. § 7402(a).

**Count IV**
**Disgorgement under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

160.     Section 7402 of the Internal Revenue Code authorizes a district court to issue orders, judgments, and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws.

161.     Ben Philippe's, Clebert Philippe's, Michelle Jenkins', and Reliance 1 Tax Services LLC's conduct, described above in paragraphs 5 through 136, substantially interferes with the enforcement of the internal revenue laws and has caused the United States to issue tax refunds to individuals not entitled to receive them.  Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC have unjustly profited at the expense of the United States by subtracting their exorbitant fees from those refunds.

162.     Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC are not entitled to these ill-gotten gains. But for the Defendants' conduct, these bogus refunds would not have been issued.

163.     The Court should enter an order under 26 U.S.C. § 7402(a) requiring Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC to disgorge to the United States the gross receipts (in the form of fees subtracted from customers' tax refunds) that Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC received for the preparation of federal tax returns making false and/or fraudulent claims.

WHEREFORE, the United States of America prays for the following:

A.     That the Court find that Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, continually and repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B.     That the Court, pursuant to 26 U.S.C. § 7407, enter a permanent injunction prohibiting Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC from acting as federal tax return preparers;

C.     That the Court find that Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC have engaged in conduct subject to penalty under 26 U.S.C. § 6701, and that injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent a recurrence of that conduct;

D.     That the Court find that Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC have engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

E.     That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter a permanent injunction prohibiting Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, and all those in active concert or participation with them, from:

(1)     acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

47

(2)     preparing or assisting in preparing federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;

(3)     owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

(4)     training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

(5)     maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

(6)     engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

(7)     engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

F.      That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC to immediately and permanently close, because of the pervasive fraud, all tax return preparation stores that they own directly or through any other entity;

G.      That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order appointing a receiver to sell all of the hard assets, such as computers (after any and all taxpayer information has been removed), electronics, and furniture, for all tax return preparation stores that Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC own directly or through any other entity;

H.      That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order prohibiting Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, directly or

through any other entity, from assigning, transferring, or selling any franchise agreement, independent contractor agreement, or employment contract related any tax return preparation business to which they or any entity under their control is a party, or has been a party since 2014;

I.      That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order barring Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC from: (1) selling to <u>any</u> individual or entity a list of customers, or any other customer information, for whom Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, and any other business or name through which Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, or those acting at their direction, have at any time since 2014 prepared a tax return; (2) assigning, disseminating, providing, or giving to any current or former franchisee, General Sales Manager, District Sales Manager, manager, tax return preparer, employee, or independent contractor of Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, or any other business through which Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC prepare tax returns or own or franchise a tax return preparation business, a list of customers or any other customer information for customers for whom Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, and any other business or name through which Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, or those acting at their direction, have at any time since 2014 prepared a tax return; and (3) selling to <u>any</u> individual or entity any proprietary information pertaining to any business or name through which Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC, or those acting at their direction, have at any time since 2014 prepared a tax return;

J.      That the Court, pursuant to 26 U.S.C. § 7402, enter an order requiring Ben

Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC to disgorge to the

United States the gross receipts (the amount of which is to be determined by the Court) that Ben

Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC received (in the

form of fees subtracted from customers' tax refunds) for the preparation of tax returns that make

or report grossly incompetent, negligent, reckless, and/or fraudulent claims, deductions, credits,

income, expenses, or other information that results in the understatement of taxes, prepared since

2014 by Ben Philippe, Clebert Philippe, Michelle Jenkins, and/or Reliance 1 Tax Services LLC,

and at any tax preparation store franchised, owned, or managed by Ben Philippe, Clebert

Philippe, Michelle Jenkins, and/or Reliance 1 Tax Services LLC;

K.      That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order

requiring Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC to

contact, within 30 days of the Court's order, by United States mail and, if an e-mail address is

known, by e-mail, all persons for whom Ben Philippe, Clebert Philippe, Michelle Jenkins, and

Reliance 1 Tax Services LLC, and their managers, employees, and tax return preparers prepared

federal tax returns or claims for a refund since 2014 and continuing through this litigation to

inform them of the permanent injunction entered against them, including sending a copy of the

order of permanent injunction but not enclosing any other documents or enclosures unless agreed

to by counsel for the United States or approved by the Court;

L.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order

requiring Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC to

produce to counsel for the United States, within 30 days of the Court's order, a list that identifies

by name, social security number, address, e-mail address, and telephone number and tax

period(s) all persons for whom Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1

Tax Services LLC, and their managers, employees, and tax return preparers prepared federal tax

returns or claims for a refund since 2014 and continuing through this litigation;

      M.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order

requiring Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax Services LLC to

produce to counsel for the United States, within 30 days of the Court's order, a list that identifies

by name, address, e-mail address, and telephone number all principals, officers, managers,

franchisees, employees, and independent contractors of Ben Philippe, Clebert Philippe, Michelle

Jenkins, and Reliance 1 Tax Services LLC from 2014 to the present;

      N.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an

injunction requiring Ben Philippe, Clebert Philippe, Michelle Jenkins, and Reliance 1 Tax

Services LLC to provide a copy of the Court's order to all principals, officers, managers,

franchisees, employees, and independent contractors of Ben Philippe, Clebert Philippe, Michelle

Jenkins, and Reliance 1 Tax Services LLC within 15 days of the Court's order, and provide to

counsel for the United States within 30 days a signed and dated acknowledgment of receipt of

the Court's order for each person whom Ben Philippe, Clebert Philippe, Michelle Jenkins, and

Reliance 1 Tax Services LLC provided a copy of the Court's order;

      O.      That the Court retain jurisdiction over Ben Philippe, Clebert Philippe, Michelle

Jenkins, and Reliance 1 Tax Services LLC and over this action to enforce any permanent

injunction entered against them;

      P.      That the United States be entitled to conduct discovery to monitor Ben Philippe's,

Clebert Philippe's, Michelle Jenkins', and Reliance 1 Tax Services LLC's compliance with the

terms of any permanent injunction entered against them; and

Q.  That the Court grant the United States such other and further relief, including costs, as

is just and reasonable.

DATED: January 16, 2020            MARIA CHAPA LOPEZ
                                   United States Attorney

                                   RICHARD E. ZUCKERMAN
                                   Principal Deputy Assistant Attorney General

                                    s/ Daniel A. Applegate
                                   DANIEL A. APPLEGATE
                                   SAMUEL P. ROBINS
                                   Trial Attorneys, Tax Division
                                   U.S. Department of Justice
                                   P.O. Box 7238, Ben Franklin Station
                                   Washington, D.C.  20044
                                   Telephone: (202) 353-8180
                                   Fax: (202) 514-6770
                                   daniel.a.applegate@usdoj.gov

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

UNITED STATES OF AMERICA

**(b)**  County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Daniel Applegate, U.S. Dept. of Justice, Tax Div., (202) 353-8180
P.O. Box 7238 Ben Franklin Stn., Washington, D.C. 20044

## DEFENDANTS

BEN PHILIPPE; CLEBERT PHILIPPE; MICHELLE JENKINS; and RELIANCE 1 TAX SERVICES LLC

County of Residence of First Listed Defendant    Orange
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☒ 1   U.S. Government
  Plaintiff
- ☐ 2   U.S. Government
  Defendant
- ☐ 3   Federal Question
  *(U.S. Government Not a Party)*
- ☐ 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☒ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from Another District *(specify)*
- ☐ 6   Multidistrict Litigation - Transfer
- ☐ 8   Multidistrict Litigation - Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 U.S.C. sections 7402(a), 7407, and 7408
Brief description of cause:
Suit for permanent injunction barring defendants from preparing tax returns and disgorgement of ill-gotten gains

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
01/16/2020

SIGNATURE OF ATTORNEY OF RECORD
s/ Daniel A. Applegate

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**    **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**    **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| | ) |
| BEN PHILIPPE; CLEBERT PHILIPPE; | ) |
| MICHELLE JENKINS; and | ) |
| RELIANCE 1 TAX SERVICES LLC | ) |
| | ) |
| *Defendant(s)* | ) |

Civil Action No.  6:20-cv-84

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Ben Philippe
1338 S. HIAWASSEE RD., APT 123
ORLANDO, FL 32835-5785

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Daniel A. Applegate
U.S. Deptartment of Justice, Tax Division
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  6:20-cv-84

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| | ) |
| _____ *Plaintiff(s)* | ) |
| v. | ) |
| | ) |
| BEN PHILIPPE; CLEBERT PHILIPPE; | ) |
| MICHELLE JENKINS; and | ) |
| RELIANCE 1 TAX SERVICES LLC | ) |
| | ) |
| _____ *Defendant(s)* | ) |

Civil Action No.   6:20-cv-84

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Clebert Philippe
1338 S. HIAWASSEE RD., APT 123
ORLANDO, FL 32835-5785

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Daniel A. Applegate
U.S. Deptartment of Justice, Tax Division
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                      *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  6:20-cv-84

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No.  6:20-cv-84 |
| BEN PHILIPPE; CLEBERT PHILIPPE; | ) | |
| MICHELLE JENKINS; and | ) | |
| RELIANCE 1 TAX SERVICES LLC | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Michelle Jenkins
1493 STATE ST. W, APT. 3
JACKSONVILLE, FL 32209

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Daniel A. Applegate
U.S. Deptartment of Justice, Tax Division
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  6:20-cv-84

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| | ) Civil Action No. 6:20-cv-84 |
| BEN PHILIPPE; CLEBERT PHILIPPE; | ) |
| MICHELLE JENKINS; and | ) |
| RELIANCE 1 TAX SERVICES LLC | ) |
| | ) |
| _Defendant(s)_ | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Reliance 1 Tax Services LLC
c/o Clebert Philippe, Registered Agent
1338 S. HIAWASSEE RD., APT 123
ORLANDO, FL 32835-5785

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Daniel A. Applegate
U.S. Deptartment of Justice, Tax Division
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                                   _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  6:20-cv-84

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: